OPINION
{¶ 1} This is an appeal by defendant-appellant, Lamarr Pete Newbern, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas following a jury trial in which appellant was found guilty of aggravated robbery, robbery, kidnapping and fleeing.
 {¶ 2} On May 28, 2002, appellant was indicted on one count of aggravated robbery, in violation of R.C. 2911.01, two counts of robbery, in violation of R.C. 2911.02, three counts of kidnapping, in violation of R.C. 2905.01, and two counts of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331. The indictment arose out of a robbery incident at a Burger King restaurant located at 3330 Indianola Avenue.
 {¶ 3} The matter came for trial before a jury on July 17, 2003. The state presented evidence that, on May 18, 2002, at approximately 5:00 a.m., three Burger King employees, Carlos Cook, Sherra Kritley, and store manager Russell Atkins, arrived to open the store. As they were standing near the door, an individual wearing a mask and holding a gun approached them and stated, "[d]on't do anything stupid. Get in there." (Tr. 47.) They entered the store and the gunman ordered Atkins to get money out of the store safe. Atkins opened the safe, put money in a bag and handed the bag to the gunman, who fled out the back door.
 {¶ 4} Another Burger King employee, Keith Wade, was late arriving for work that day and, as he entered the parking lot, he noticed Atkins, Kritley and Cook near the store entrance. Wade also observed two other individuals "running up from around the side near the trash dumpster." (Tr. 67.) As Wade approached the store, one of these individuals came around the corner with a gun in his hand Wade hid near Atkins' car, and watched as the man entered the restaurant with the employees. Wade did not see the other individual again, but when he stood up, he heard somebody say, "[h]ey, where are you going?" (Tr. 68.)
 {¶ 5} Wade, who had observed police officers nearby on his way to work, ran to where the officers were located, and informed them the Burger King was being robbed. Columbus Police Officer Michael Huffman drove to the scene and, as he exited his patrol car, he saw two black males fleeing Burger King. One of the suspects was wearing all black, while the other individual was wearing a gray sweatshirt, dark pants and black hat. One of the suspects was also carrying a light-colored bag. Officer Huffman chased the men across Oakland Park Avenue to a nearby auto repair store, approximately 50 yards from the Burger King. From there, the two suspects sped off in a car, heading westbound on Oakland Park Avenue.
 {¶ 6} At approximately 5:00 a.m., Columbus Police Officer Mark Seevers received a dispatch reporting a robbery at a Burger King at Oakland Park and Indianola Avenues. When he arrived at the restaurant, Officer Seevers observed another officer on foot running toward a vehicle. The vehicle was traveling westbound, and Officer Seevers began pursuing the vehicle. In addition to the driver, Officer Seevers noticed a passenger in the rear seat. Another cruiser in the area also began pursuit of the suspect vehicle. On two occasions, the vehicle slowed down and the passenger in the rear seat attempted to exit, but then shut the door and the vehicle accelerated again.
 {¶ 7} The car eventually came to a stop on Fourth Street, and the officers attempted to block the occupants from exiting the vehicle. The driver managed to flee the car, but was apprehended by officers a short time later, while the passenger in the back, identified at trial as appellant, was blocked from leaving the vehicle.
 {¶ 8} The officers recovered two ski masks and a dark-colored sweatshirt from the back seat of the vehicle, but they did not find any weapons or money in the car. The driver of the vehicle was identified as Lamarr Poxton Newbern, the uncle of appellant.
 {¶ 9} Appellant testified on his own behalf, and he acknowledged during direct examination that he had a prior conviction for theft and for carrying a concealed weapon. Appellant denied he was involved in the robbery of the Burger King on May 18, 2002. According to appellant, on the date of the incident he received a phone call from someone asking him to "come over." (Tr. 187.) As he was walking out of the door of his house, at approximately 1:00 a.m., his uncle drove by and asked him to "come on, get in the car." (Tr. 187.) Appellant stated that another individual, who he knew on the street as "Mike," was also in the car. Appellant did not know Mike's last name.
 {¶ 10} Appellant testified that, while he was in the car, he "happened to fall asleep, and all I remember is when I woke up we was on a high-speed chase." (Tr. 190.) Appellant's uncle told him, "[d]on't worry about it, just go ahead and sit back and relax." (Tr. 190.) Appellant asked his uncle to slow down so he could get out but, on each occasion when he slowed down, he would then quickly accelerate so that appellant was unable to exit the vehicle. The car eventually stopped at a location on Fourth Street, and appellant's uncle fled the car, but appellant remained in the car "because I didn't do nothing." (Tr. 191.)
 {¶ 11} On cross-examination, appellant acknowledged that his uncle worked at the Burger King that was robbed. Appellant denied ever applying for a job at that restaurant. He also denied that Kritley was a relative.
 {¶ 12} Appellant stated that the phone call he received at 1:00 a.m. was from somebody named "Thomas." (Tr. 200.) According to appellant, there would be no record of the call because he was using a cell phone that he purchased from "somebody on the streets." (Tr. 201.) Appellant was surprised to see his uncle at his house at 1:00 a.m. with Mike; "[t]hey popped up for no reason that I know." (Tr. 207.) When appellant later woke up in the car, Mike was gone. Appellant was unaware of the ski masks and sweatshirts recovered from the backseat of the vehicle where he had been sleeping.
 {¶ 13} Following deliberations, the jury returned verdicts finding appellant guilty of aggravated robbery, robbery, kidnapping and fleeing. The trial court sentenced appellant by judgment entry filed on September 25, 2003.
 {¶ 14} On appeal, appellant sets forth two assignments of error for review:
ASSIGNMENT OF ERROR NO. 1
The trial court erred in failing to grant the motion for judgment of acquittal (crim. r. 29) as the evidence was insufficient to establish that lamarr pete newbern committed the crimes. in addition, the conviction is against the manifest weight of the evidence.
ASSIGNMENT OF ERROR NO. 2
Appellant was denied effective assistance of counsel, as guaranteed by the sixth amendment of the united states constitution, and article 1, sec. 10 of the ohio constitution, when trial counsel failed to call exonerating witnesses and did not introduce documents that tended to show co-defendant's involvement in the crimes and appellant's lack of involvement in the crimes.
 {¶ 15} Under his first assignment of error, appellant asserts that his convictions were based on insufficient evidence and against the manifest weight of the evidence.
 {¶ 16} The legal concepts of sufficiency of the evidence and weight of the evidence are not the same. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. In State v. Sexton, Franklin App. No. 01AP-398, 2002-Ohio-3617, at ¶ 30-31, this court addressed the different standards of review in considering sufficiency and manifest weight challenges, stating in relevant part:
To reverse a conviction because of insufficient evidence, we must determine as a matter of law, after viewing the evidence in a light most favorable to the prosecution, that a rational trier of fact could not have found the essential elements of the crime proved beyond a reasonable doubt. * * * Sufficiency is a test of adequacy, a question of law. * * * We will not disturb a jury's verdict unless we find that reasonable minds could not reach the conclusion the jury reached as the trier of fact. * * * We will neither resolve evidentiary conflicts in the defendant's favor nor substitute our assessment of the credibility of the witnesses for the assessment made by the jury. * * * A conviction based upon legally insufficient evidence amounts to a denial of due process * * * and if we sustain appellant's insufficient evidence claim, the state will be barred from retrying appellant. * * *
A manifest weight argument, by contrast, requires us to engage in a limited weighing of the evidence to determine whether there is enough competent, credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt and, thereby, to support the judgment of conviction. * * * Issues of witness credibility and concerning the weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to make those determinations is superior to that of a reviewing court. * * * Nonetheless, we must review the entire record. With caution and deference to the role of the trier of fact, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury, as the trier of facts, clearly lost its way, thereby creating such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. * * *
(Citations omitted.)
 {¶ 17} Ohio's aggravated robbery statute, R.C. 2911.01(A)(1), states in part: "No person, in attempting or committing a theft offense * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possess it, or use it[.]" Robbery is proscribed by R.C.2911.02(A)(3), which provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [u]se or threaten the immediate use of force against another." The elements of kidnapping, as pertaining to appellant's conviction are: (1) the use of threat or force; (2) to remove another from the place where the person is found or restrain the liberty of the other person; and (3) in order to facilitate the commission of any felony or flight thereafter. R.C. 2905.01(A)(2). The offense of fleeing or eluding, as set forth in R.C. 2921.331(B), prohibits an individual from operating a motor vehicle "so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."
 {¶ 18} Regarding appellant's challenge to the sufficiency of the evidence, the prosecution presented evidence that two individuals were in the vicinity of the Burger King on the morning of May 18, 2002, waiting for employees to open the store. One of the individuals pulled out a gun and ordered the employees inside; the gunman demanded money and then ran out the back door. A police officer arrived and observed the two men; he yelled for them to stop, but they fled the area. One of the men was wearing a gray sweatshirt with dark pants, while the other man was wearing all black clothing. Officer Huffman chased the men on foot, and he subsequently heard a car engine start. During the chase, the officer lost sight of one of the suspects for "[l]ess than one or two seconds," and he lost sight of the second individual for approximately five to ten seconds. (Tr. 160.) The officer again ordered them to stop but the car drove away; the suspect wearing the gray sweatshirt was in the driver's seat, while the other individual wearing all black was laying in the back seat. The officer noted that the individual in the back seat was wearing either a hood or a hat.
 {¶ 19} Following a pursuit, police officers stopped the vehicle a short time later and, despite the officers' attempt to block the doors of the vehicle, the driver fled the scene but was apprehended a short time later. He was subsequently identified as appellant's uncle. Appellant was in the back seat of the suspect vehicle, and officers subsequently searched the back seat and recovered ski masks, a dark-colored sweatshirt and gloves. Viewed in a light most favorable to the prosecution, a rational factfinder could have found the essential elements of the offenses proven beyond a reasonable doubt.
 {¶ 20} Appellant's theory at trial was essentially mistaken identity, i.e., that appellant's uncle and a third individual, "Mike," committed the robbery, and that appellant had simply been riding in the vehicle during the early morning hours, fell asleep and woke up to find his uncle fleeing the police. Appellant points to evidence that one of the officers lost sight of one of the suspects for between five to ten seconds; however, despite this fact, only a brief amount of time elapsed before the officer again observed two men in a vehicle fleeing the scene, wearing clothing matching the description of the fleeing suspects, and there was no testimony describing any other individuals in the area at the time. As noted above, when officers subsequently stopped the vehicle, appellant was in the backseat wearing dark pants, and officers discovered a dark-colored sweatshirt and two dark masks in the backseat. As also noted by the state, appellant had no explanation for the presence of those items in the car. Further, although appellant notes that no money or weapon were recovered, that fact does not establish that appellant was not involved in the crime or that the evidence was insufficient to convict.
 {¶ 21} Appellant contends that he could not have been convicted of the failure to comply (felony fleeing) count because he was not the driver of the vehicle; however, the trial court instructed the jury regarding Ohio's complicity statute, which states that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). In order to support a conviction for complicity by aiding and abetting under R.C. 2923.03(A)(2), "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." State v. Johnson (2001),93 Ohio St.3d 240, syllabus.
 {¶ 22} In the instant case, appellant did not object at trial to an instruction on aiding and abetting, nor does appellant contend on appeal that it was error for the court to give a complicity instruction. Upon review, there was evidence upon which the trier of fact could have found that appellant, even if not the driver of the vehicle, was an active participant in the flight from the officers, and, therefore, guilty of the offense as an aider and abettor.
 {¶ 23} Further, in considering appellant's challenge to the weight of the evidence, we cannot conclude that the jury clearly lost its way or created a manifest miscarriage of justice. The jury was in the best position to assess the credibility of the witnesses; the trier of fact was not required to accept appellant's explanation that he fell asleep during the events and awoke to discover his uncle fleeing in the car, and it is apparent that the jury deemed appellant's version less than credible. Based upon the record presented, a reasonable jury could have found appellant guilty of each of the offenses beyond a reasonable doubt, and we will not disturb those findings on appeal as against the manifest weight of the evidence.
 {¶ 24} Based upon the foregoing, appellant's first assignment of error is without merit and is overruled.
 {¶ 25} Under his second assignment of error, appellant asserts that his trial counsel was ineffective in failing to timely disclose witnesses to the prosecution, and in failing to introduce into evidence a letter.
 {¶ 26} In State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, the Ohio Supreme Court noted the applicable standard in reviewing a claim of ineffective assistance of counsel:
2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle
[1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623;Strickland v. Washington [1984], 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674, followed.)
3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
 {¶ 27} Appellant first contends that his trial counsel was ineffective in failing to timely disclose witnesses to the prosecution. More specifically, on the second day of trial, the prosecutor noted on the record that he had just received "reciprocal discovery in the form of eight potential witnesses that the Defense intends to call, only one whose name I ever heard of before today." (Tr. 118.) The prosecutor further noted, based upon an earlier conversation with defense counsel, that these potential witnesses were apparently individuals "who know something they heard on the street or some hearsay or something else as to where guns or money ended up." (Tr. 118.) The prosecutor objected on the basis of defense counsel's failure to comply with Crim.R. 16.
 {¶ 28} The trial court subsequently made the following ruling regarding defense counsel's request:
Revisiting the State's objection to you calling witnesses that were named yesterday afternoon at some point, what I have decided * * * is as follows: You're [defense counsel] going to communicate with [the prosecutor], he's going to pick a time and a place. Any witness that's going to testify that was identified late will be at that place at that time and will completely cooperate with any questioning that [the prosecutor] wants to engage in. Any witness that does not so cooperate will not testify.
If after all of this happens if [the prosecutor] has any additional objections, I will listen to whatever you have to say, but this is an imperfect solution to a problem that could have been avoided. On the one hand I want this man to have a full and complete fair trial; on the other hand the State is entitled to have these names way ahead of time so they can investigate. So this seems to be a middle road where the State will get to find out what these witnesses have to say.
If the State needs further time to respond in some fashion to what you're going to learn, you tell me and I'm going to be pretty liberal with granting a postponement or an interruption of this proceeding in order for you to have time to respond. * * *
(Tr. 134-135.)
 {¶ 29} Appellant acknowledges that the record fails to indicate what took place after the trial court ruled it would allow the potential witnesses to be interviewed by the state. Nevertheless, the record shows that trial counsel's failure to timely disclose certain witnesses did not preclude defense counsel from presenting those witnesses. Rather, as noted, the trial court indicated its willingness to allow these potential witnesses to testify, assuming they cooperated in answering questions to be posed by the prosecutor; however, whether or not those witnesses were interviewed is not clear from the record, leaving open the question whether counsel may have reassessed the value of their testimony, a choice that would fall within the ambit of trial strategy. Moreover, based upon the limited record before this court, it is speculative whether these witnesses would have been of assistance to appellant. Accordingly, appellant has not demonstrated prejudice by counsel's actions.
 {¶ 30} Appellant also contends that his counsel was ineffective in failing to introduce into evidence a letter appellant claims would have supported his lack of involvement in the crime.
 {¶ 31} The record indicates that, just prior to closing arguments, defense counsel made the following proffer:
* * * If it please the Court, Judge, I'm going to proffer to you a copy of what has been labeled as Defendant's Exhibit 6. I have given a copy to Mr. Krapenc and, Judge, what I will urge you the original of this letter is one that Lamarr Pete Newbern, my client, has in his possession. He believes in his heart it's a letter sent to him from his uncle, Lamarr Poxton Newbern.
We weren't sure whether or not Lamarr Poxton was going to testify in this case. It was delivered to him apparently through some jail channel, a runner handed it to him. And, of course, from the sound of things the language in that letter it sounds like Lamarr Poxton Newbern is trying to set Lamarr Pete Newbern up to lie for him or give some suggested testimony. The absence of Lamar Poxton testifying at all there is no real way to use it for impeachment purposes or cross him about that, but I told my client I would make that part of the record, that copy of the letter.
(Tr. 236-237.)
 {¶ 32} The trial court indicated that the letter would be "admitted as part of the record in this case. However, it's not going to the jury for what I think are obvious reasons. It's not authenticated and it's hearsay." (Tr. 237-238.)
 {¶ 33} Appellant notes that the proffered exhibit purports to be a letter, sent from jail, authored by his uncle, Lamarr Poxton Newbern, to appellant. In the letter, the writer states in part: "I need you to make a statement to my lawyer saying that I know nothing about anything an[d] all I did was pick you up closes [sic] to my home."
 {¶ 34} Appellant's argument that the letter would have supported his lack of involvement in the crime is unpersuasive. The contents of the letter, in which appellant's uncle purportedly encourages appellant to make statements exonerating him, were not exculpatory to appellant, and, in fact, we agree with the state's contention that the letter might be viewed as inculpatory. Apart from hearsay and authentication problems noted by the trial court, the letter does not cast doubt on the jury's guilty verdict, and appellant cannot show a reasonable probability that the result of the proceeding would have been different had the letter been admitted into evidence.
 {¶ 35} Accordingly, appellant's second assignment of error is without merit and is overruled.
 {¶ 36} Based upon the foregoing, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Klatt and Watson, JJ., concur.