OPINION
{¶ 1} Appellant, Bruce Suggs, Jr., appeals his convictions in the Butler County Court of Common Pleas for tampering with evidence and complicity to failure to comply with the order or signal of a police officer. We affirm the convictions.
 {¶ 2} On the evening of March 9, 2007, Officer Michael Lopez of the West Chester Police Department noticed a car driving left of center. He pulled the car over in which were located the driver, John Brochu, front passenger, Matt Hutchinson, and backseat passenger, *Page 2 
Bruce Suggs. After Officer Lopez approached the passenger-side and asked for Brochu's identification, Lopez noticed the smell of burnt marijuana and then requested Brochu's permission to search the vehicle. After Brochu refused the request, Lopez called for a canine unit and requested Hutchinson's and Suggs' identification. Although Suggs ultimately complied with the request, Hutchinson refused to cooperate, instead telling the officer that he had done nothing wrong and should not have been required to provide his identification.
 {¶ 3} Soon after, Lopez radioed dispatch that Hutchinson was being uncooperative and requested back-up. After Hutchinson refused to exit the vehicle upon Lopez's request, Lopez unlocked and opened the passenger door and stood next to Hutchinson until back-up arrived in the form of Sergeant Matt Beiser. Although Hutchinson surrendered his identification to Sergeant Beiser, he repeatedly refused to exit the car. At that point, another back-up officer arrived and took position at the driver's side of the car.
 {¶ 4} After Hutchinson again refused to exit the car, Lopez reached inside to unlatch his seatbelt at which time Hutchison smacked his hand away. Lopez responded by informing Hutchinson that if he did not exit the vehicle that the officers would use their mace on him. After once more refusing, Lopez, Beiser, and the third officer began to mace Hutchinson and tried in vain to extract him from the car. As the police continued to try and force Hutchinson from the car, Hutchinson leaned forward and removed a silver pistol from the waistband of his pants. Although the officers noticed the gun and retreated, Hutchinson exited the car, turned towards the officers, and shot Beiser in the leg and shoulder.
 {¶ 5} Within a few seconds of the shots, a fourth officer, Kyle Smith responded to the scene. Before he could exit his vehicle to assist, Brochu drove off and Smith followed in pursuit. After Lopez and the other officer tended to Beiser, Lopez also began pursuit of Brochu's vehicle, resulting in a chase in excess of 110 m.p.h. Soon after the chase began, *Page 3 
Brochu attempted in vain to make a sharp turn and his vehicle crashed into a fence. Within seconds, multiple officers descended onto the scene to detain Brochu, Hutchinson, and Suggs.
 {¶ 6} At some point, Hutchinson crawled out of the passenger window and ran into a lot which contained parked semi truck trailers. While Brochu remained inside the car with his hands on the ceiling, Suggs crawled out of the car with a broken ankle, and eventually lay with his face and hands on the pavement. Officers detained Brochu and Suggs and pursued Hutchinson who continued to shoot at the officers. During the exchange of gun fire, another officer, Jeffrey Duma, was shot in the hand and shoulder. The gunfire and pursuit ended after Hutchinson fatally shot himself in the head.
 {¶ 7} The next day, Hutchinson's father and two of his friends went to view the scene where Hutchinson died. Not knowing the details of the previous night's events, the three men walked the fence line where they noticed damage from the car's impact. The men stopped near a shrub-covered ravine, approximately 15 yards from the damaged portion of the fence, to take in the whole scene. Soon thereafter, one of the men noticed a gun lying in the grass next to a bush. Hutchinson's father called Lieutenant Joseph Witzman, who had informed the family of Hutchinson's death the night before. Witzman came back to the scene to investigate the matter and took into evidence the gun and an extra ammunition magazine which had been located approximately ten feet from the gun.
 {¶ 8} In a subsequent search of Hutchinson, Brochu, and Suggs' homes, the police seized evidence which established that the gun Witzman collected near the ravine belonged to Suggs.
 {¶ 9} Suggs was indicted on two counts of complicity to felonious assault, and one count each for carrying concealed weapons, improperly handling firearms in a motor vehicle, *Page 4 
and tampering with evidence. After a trial in June 2007, a jury found Suggs guilty of improperly handling firearms in a motor vehicle and carrying a concealed weapon. However, the jury was unable to reach a verdict in regards to the other three charges. Before the retrial began, the state indicted Suggs on an additional count of complicity to failure to comply with the order or signal of a police officer, with a firearm specification.
 {¶ 10} After the re-trial in January 2008, a jury found Suggs not guilty of the two counts of complicity to felonious assault, but found him guilty of complicity to failure to comply with an order or signal of a police officer and that Suggs committed the offense while he had a firearm. The jury also found Suggs guilty of tampering with evidence and that he did so while in possession of a firearm. Including his convictions from the first and second trial, as well as the mandatory gun specifications, the court sentenced Suggs to an eight-year aggregate sentence. It is from the convictions at the re-trial that Suggs now appeals, raising one assignment of error.
 {¶ 11} Assignment of Error No. 1:
 {¶ 12} "THE JURY FINDINGS OF GUILTY AS TO COUNTS TWELVE AND THIRTEEN ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} In his sole assignment of error, Suggs argues that his convictions for tampering with evidence and complicity to failure to comply with an order or signal of a police officer were against the manifest weight of the evidence presented at his trial. This argument lacks merit.
 {¶ 14} While the test for sufficiency requires an appellate court to determine whether the state has met its burden of production at trial, a manifest weight challenge examines the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. State v. Wilson, Warren App. No. CA2006-01-007, 2007-Ohio-2298. *Page 5 
"In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Cummings, Butler App. No. 2006-09-224,2007-Ohio-4970, ¶ 12.
 {¶ 15} While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, "these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." State v.Walker, Butler App. No. CA2006-04-085, 2007-Ohio-911, ¶ 26. Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52.
 A. Tampering With Evidence {¶ 16} Suggs was convicted of one count of tampering with evidence in violation of R.C. 2921.12(A)(1) which states: "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2901.22(A) is useful in clarifying the necessary purpose with which Suggs had to act in order to impair the evidence's value or availability. A "person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against *Page 6 
conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 17} Suggs essentially argues that the evidence does not support a conviction because he never had the purpose to tamper with evidence. Instead, Suggs claims that he was merely a backseat passenger during the shooting of Sergeant Beiser and then threw his gun away to ensure that he would not be shot when the police came to detain him once the car crashed. Specifically, Suggs asserts that he was fearful of being shot by the police because they may not have been informed that Hutchinson was the only passenger who had fired his gun during the initial traffic stop and may have mistakenly believed that he too had fired at the officers. Suggs also argues that once the car crashed, he got out of the vehicle and "dispossessed himself of any gun or ammunition to remove himself as the source of any potential danger to officers."
 {¶ 18} Suggs relies on State v. Like, Montgomery App. No. 21991,2008-Ohio-1873, in which the Second District Court of Appeals reversed the appellant's conviction for tampering with evidence because no evidence was presented to support the state's claim that the appellant removed the gun to impair its value or availability as evidence.
 {¶ 19} At the trial, however, the jury heard credible evidence that Suggs' reason for throwing the gun was to stop the police from using it as evidence against him. As Lieutenant Witzman testified, Suggs' gun was located the day after the crash 45 feet away from the car in a grassy ravine, with the magazine found an additional ten feet further from the gun. The jury could reasonably draw an inference that had Suggs intended to disarm himself, there were multiple ways to do so other than throwing the gun into a grassy ravine located over 45 feet away from the crash cite where he knew officers would be collecting evidence.
 {¶ 20} In perhaps the most damaging evidence against Suggs, the jury heard *Page 7 
testimony from Officer Jeffrey Newman who was assigned to guard Suggs after he was taken to the hospital to receive medical attention for the injuries he sustained in the crash. During the initial hours after Suggs received surgery to repair his broken ankle, Officer Newman overheard Suggs and a fellow officer discussing a certain street where Newman had previously lived, and Newman and Suggs struck up a conversation regarding the neighborhood they once shared.
 {¶ 21} After their conversation, but before Newman's shift was over, Suggs received another visitor. After the visitor left, Newman went in to check on Suggs at which time Suggs asked Newman about the severity of charges against him. Newman responded that he did not know what the charges were and tried to exit the room. Newman testified that as he went to back out of the room, "[Suggs] said, I just wanted to let you know I knew what was going down, and that is the reason why I threw my gun out of the car window before we crashed. I would have jumped out of the car, but I didn't want to get run over or get shot."
 {¶ 22} Suggs countered this testimony by having Officer Newman confirm via cross-examination that Suggs had just been party to a very frenzied event and endured surgery so that it was possible that Suggs was dazed or confused when he made the statement. However, the jury was free to judge the credibility of Newman's testimony and decide whether Suggs' comments were the product of confusion or whether they were a true depiction of the events and intentions of the previous night.
 {¶ 23} Upon reviewing the record, weighing evidence and reasonable inferences while considering the credibility of the witnesses, we cannot say that the jury clearly lost its way when it determined that Suggs' purpose for throwing the gun was to tamper with evidence. See State v.Mann, Clermont App. No. CA2006-05-035, 2007-Ohio-1555 (affirming appellant's conviction for tampering with evidence where he threw a gun out of the car after *Page 8 
police began pursing him to investigate an assault report); State v.Rinehart, Ross App. No. 07CA2983, 2008-Ohio-5770 (affirming conviction for tampering with evidence where appellant threw gun out of a window during a police pursuit even when his reason for doing so was that the driver told him to do it and he was afraid of getting shot if the police found him in possession of the gun); and State v. Lytle (Aug. 19, 1988), Highland App. No. 632 (affirming conviction for tampering with evidence where appellant threw a gun out of his car window and a third party located the gun because it was so displaced that police were unable to locate it during an initial search).
 B. Complicity to Failure to Comply {¶ 24} Suggs was also convicted of complicity to failure to comply with the order or signal of a police officer. According to R.C. 2921.331(B), "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2923.03(A)(2), Ohio's complicity statute, states that "no person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * Aid or abet another in committing the offense."
 {¶ 25} To support a conviction for complicity by aiding and abetting, the evidence must demonstrate "that the accused supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the accused shared the criminal intent of the principal." State v. Mota, Warren App. No. CA2007-06-082,2008-Ohio-4163, ¶ 19. Such intent may be inferred from the circumstances surrounding the crime, or the defendant's presence, companionship and conduct before and after the offense is committed. State v.Johnson, 93 Ohio St.3d 240, 245, 2001-Ohio-1336.
 {¶ 26} Suggs argues that his conviction for complicity to failure to comply was not *Page 9 
supported by the manifest weight of the evidence because Brochu solely made the choice to drive off and disobey the orders of the police. We disagree.
 {¶ 27} During the trial, the jury heard testimony from Brochu regarding the circumstances of the shooting and subsequent flight. Brochu testified that immediately after Sergeant Beiser was shot, Hutchinson told him to drive away and that during the chase, Suggs told him to "get out of here," "keep going," "go, go, go," and "whatever you do, don't stop." Brochu also testified that once Hutchinson told him to drive away, Suggs continued to echo Hutchinson's commands to elude the police.
 {¶ 28} On appeal, Suggs points to aspects of Brochu's testimony to demonstrate that his conviction was against the manifest weight of the evidence. Specifically, Brochu admitted that the events were very hectic and that everyone was yelling at the same time. When asked what Suggs said during the chase, Brochu answered that Suggs said "what sounded like keep going," and later testified that he remembered Suggs "saying what I thought was, whatever you do, don't stop." Brochu also admitted that he was under so much stress and pressure that at some point during the chase he had forgotten that Suggs was in the back seat.
 {¶ 29} Although the jury could have concluded that Brochu's testimony was not credible enough to prove the state's claim that Suggs supported, assisted, encouraged, cooperated with, advised, or incited Brochu to disobey the police's orders, it did not. Instead, the jury was free to draw the inference that Suggs' statements telling Brochu to get out of here, keep going, go, go, go, and whatever you do, don't stop, demonstrated that he was an active participant in the flight from officers and therefore guilty of complicity to failure to comply with the order or signal of a police officer.
 {¶ 30} Upon reviewing the record, weighing evidence and reasonable inferences while *Page 10 
considering the credibility of the witnesses, we cannot say that the jury clearly lost its way when it determined that Suggs aided and abetted Brochu in failing to comply with the order or signal of a police officer. See State v. Newbern, Franklin App. No. 03-AP-977,2004-Ohio-3694, ¶ 22 (affirming appellant's conviction because "there was evidence upon which the trier of fact could have found that appellant, even if not the driver of the vehicle, was an active participant in the flight from the officers, and, therefore, guilty of the offense as an aider and abettor"); and State v. Cunningham, Lake App. No. 2007-L-034, 2008-Ohio-1127, ¶ 45 (affirming appellant's conviction because the evidence heard by the jury could reasonably be found to prove appellant assisted or cooperated with his co-defendants, and "could therefore be found guilty of failure to comply via complicity to aid and abet").
 {¶ 31} Having found that Suggs' convictions for tampering with evidence and complicity to failure to comply with the order or signal of a police officer were supported by the manifest weight of the evidence, his sole assignment of error is overruled.
 {¶ 32} Judgment affirmed.
 BRESSLER, P.J., and POWELL, J., concur. *Page 1