OPINION
{¶ 1} Appellant, Brian M. Teachout, appeals from the April 10, 2006 judgment entry of the Lake County Court of Common Pleas, in which he was sentenced for trafficking in marijuana and having weapons while under disability.
 {¶ 2} On November 2, 2005, appellant was secretly indicted by the Lake County Grand Jury on four counts: counts one and three, trafficking in marijuana, felonies of the fourth degree, in violation of R.C.2925.03(A)(1); count two, trafficking in marijuana, *Page 2 
a felony of the fifth degree, in violation of R.C. 2925.03(A)(1); and count four, having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2). On November 18, 2005, appellant filed a waiver of the right to be present at his arraignment and the trial court entered a not guilty plea in his behalf.
 {¶ 3} A jury trial commenced on February 21, 2006.
 {¶ 4} At the jury trial, the testimony revealed that appellant and Jason Garry ("Garry"), both in their early twenties, had known each other since they were fourteen years old. Garry, who testified for appellee, the state of Ohio, indicated that he frequently visited appellant at appellant's girlfriend's home in Willoughby as well as appellant's mother's residence in Mentor.[1] Unbeknownst to appellant, Garry was a paid confidential informant with the Lake County Narcotics Agency ("LCNA"), in which he set up and carried out drug buys. As a result, Garry informed narcotics agents that he could make some "buys" off of appellant.
 {¶ 5} The drug buys at issue took place on May 19, May 27, and June 2, 2004. Prior to each buy, a narcotics agent met with Garry and performed a basic pat down and cursory search of his vehicle. Garry called appellant each time on the telephone to set up the transactions, however, the calls were never recorded. Garry was wired so agents could hear the actual transactions.[2] According to Garry, each incident took place in appellant's bedroom at Darlene Teachout's home. He stated that he paid appellant $180 the first two times for one ounce of marijuana. On the last buy, Garry said that he paid appellant $60 for a quarter of an ounce of marijuana. Garry testified *Page 3 
that during two of the buys, appellant's eighteen-month-old child was in the bedroom as well as in the hallway outside the bedroom.
 {¶ 6} On June 7, 2004, agents obtained a search warrant and searched Darlene Teachout's home. Inside the bedroom where the transactions occurred, agents found a handgun and two semi-automatic rifles. Appellant was not in the home during the search. According to Darlene Teachout, she was the only one home at the time of the search. She testified that she lived in the home with her boyfriend and her daughter, and that appellant primarily lived with his girlfriend. Darlene Teachout said that the bedroom in question was used to store items belonging to both appellant as well as her other son. However, she stated that she previously wrote a statement indicating that the bedroom where the drugs were found was in fact only appellant's bedroom. She indicated that her boyfriend was a gun collector and that she never knew appellant to have any guns.
 {¶ 7} Garry also testified that he did not observe any guns in the bedroom during the drug transactions. However, he noted that appellant told him that someone purchased an AK47 for him from a gun show, and that he had seen it in appellant's bedroom on a prior occasion, as well as a rifle and a pistol.
 {¶ 8} Following the jury trial, the jury returned a verdict of guilty on all four charges. Pursuant to its April 10, 2006 judgment entry, the trial court sentenced appellant to twelve months in prison on count one; twelve months on count two; twelve months on count three; and three years on count four, to be served concurrent with each other. The trial court also suspended appellant's driver's license for six months, and notified him that post release control was optional, up to a maximum of three years. *Page 4 
It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 9} "[1.] The trial court abused its discretion when in its charge to the jury it altered the definition of possession to include a condition of ownership not required by the Ohio Jury Instructions.
 {¶ 1O} "[2.] The trial court erred to the prejudice of [appellant] in denying his motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 11} "[3.] The trial court erred to the prejudice of [appellant] when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 12} "[4.] The trial court erred when it sentenced [appellant] to more-than-the-minimum prison terms in violation of the due process and ex post facto clauses of the Ohio and United States Constitutions.
 {¶ 13} "[5.] The trial court erred when it sentenced [appellant] to more-than-the-minimum prison terms in violation of [appellant's] right to due process.
 {¶ 14} "[6.] The trial court erred when it sentenced [appellant] to more-than-the-minimum prison terms based on the Ohio Supreme Court's severance of the offending provisions under Foster, which was an act in violation of the principle of separation of powers.
 {¶ 15} "[7.] The trial court erred when it sentenced [appellant] to more-than-the-minimum prison terms contrary to the rule of lenity.
 {¶ 16} "[8.] The trial court erred when it sentenced [appellant] to more-than-the-minimum prison terms contrary to the intent of the Ohio legislators." *Page 5 
 {¶ 17} In his first assignment of error, appellant argues that the trial court abused its discretion when in its charge to the jury, it altered the definition of possession to include a condition of ownership not required by the Ohio Jury Instructions. He stresses that the trial court's instruction to the jury that it must find evidence that he "owned" the weapons was an improper jury instruction that misled and confused the jury.
 {¶ 18} State v. Montgomery (1991), 61 Ohio St.3d 410, 413, states: "[t]he term `abuse of discretion' `(* * *) connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. (* * *)' State v. Adams (1980),62 Ohio St.2d 151, 157 * * *." (Parallel citations omitted.)
 {¶ 19} This court stated in State v. Norwood (Mar. 22, 2002), 11th Dist. No. 2000-L-146, 2002 Ohio App. LEXIS 1325, at 12-15: "[w]hen reviewing a trial court's jury instructions, an appellate court must examine the entire jury charge. State v. Porter (1968),14 Ohio St.2d 10, 13. * * * One sentence or one phrase should not be looked at in isolation. Id. * * * Further, generally, jury instructions are reviewed in their entirety to determine if they contain prejudicial error. State v.Fields (1984), 13 Ohio App.3d 433, 436 * * * [.]" (Parallel citations omitted.) Thus, even if a jury instruction was inappropriate, if it did not materially affect the outcome of the case, a reversal of the judgment is not justified. Id. at 15.
 {¶ 20} "The instructions found in Ohio Jury Instructions are not mandatory. Rather, they are recommended instructions based primarily upon case law and statutes, crafted by eminent jurists to assist trial judges with correctly and efficiently charging the jury as to the law applicable to a particular case. Requiring a trial court to rigidly follow these instructions would remove judicial discretion and control from the trial proceedings *Page 6 
and not allow the flexibility necessary to manage the various situations that arise during a jury trial.'" State v. Shaffer, 11th Dist. No. 2001-T-0036, 2003-Ohio-6701, at ¶ 44, quoting State v. Martens (1993),90 Ohio App.3d 338, 343.
 {¶ 21} In the case sub judice, appellant takes issue with the following jury instruction related to the having weapons while under disability charge:
 {¶ 22} "And you must find that the defendant knowingly acquired and again knowingly means a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or he is aware that his conduct will probably be of a certain nature. Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances that have been placed into evidence.
 {¶ 23} "So you must find that he did knowingly and all of the following conditions are in the disjunctive, you need not find that the defendant meets all of these tests but one is satisfactory for you to find that he possessed the firearms that are charged in this section; acquire, to have, to carry or to use a firearm or dangerous ordnance.
 {¶ 24} "Now to have means to possess.
 {¶ 25} "To acquire means to obtain or to take into control.
 {¶ 26} "And you need not find that the defendant had dominion and control over the item because the statute says to acquire or have. So therefore the issue is that you must find there is sufficient evidence that the defendant owned. Whether or not the weapons were on or about his person may relate to some of the other conditions of ownership but under acquire or have the issue is did he own." *Page 7 
 {¶ 27} Appellant's counsel ultimately objected. The trial court did not give a different instruction.
 {¶ 28} We note that appellant is correct that ownership is not a necessary facet under the definitions of "possession" and "had" with respect to having weapons while under disability. 4 Ohio Jury Instructions (2006), Section 409.50(5); and 4 Ohio Jury Instructions (2006), Section 523.13(3). Having weapons while under disability, as codified in R.C. 2923.13(A) provides: "[u]nless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance * * *." It was stipulated that appellant was under a disability pursuant to R.C. 2923.13. Thus, the sole issue is whether appellant knowingly acquired, had, carried, or used any firearm or dangerous ordnance. It was also stipulated that the weapons retrieved were firearms.
 {¶ 29} The written jury instructions define "had" as meaning "possessed." In order to "have" a firearm within the meaning of R.C.2923.13(A), a person must have actual or constructive possession of it. Both "constructive possession" and "possession" were defined in the jury instructions. Again, although ownership is not necessary under 4 Ohio Jury Instructions (2006), Section 409.50(5), that section also states that "[a] person may possess or control property belonging to another."
 {¶ 30} According to Garry, he had seen weapons in appellant's possession, and in fact, they were found in his bedroom during the execution of the search warrant. Thus, if the jury found that appellant owned the weapons, it is reasonable to infer that he would have had the element of possession necessary to obtain a conviction under R.C.2923.13(A)(2). *Page 8 
 {¶ 31} Based on our reading of the transcript, it appears that the intent of the trial court was only to clarify the term "acquire," pursuant to the arguments made by appellant's counsel. The trial judge offered to give a different instruction, but appellant's attorney did not think it would be wise to do so. We note that the jurors were given written copies of the jury instructions, without the "ownership" reference. The trial judge told the jurors that if they had any questions or did not understand something, they were to write their question on a piece of paper and the bailiff would give him their note. There were no questions posed to the trial court by the jurors during their deliberations. Thus, we can reasonably conclude that the jury was not mislead or confused in any manner by the jury instructions. Looking at the jury charge in its entirety, the isolated reference to "ownership" did not materially affect the outcome of this case.
 {¶ 32} Appellant's first assignment of error is without merit.
 {¶ 33} In his second assignment of error, appellant alleges that the trial court erred by denying his motion for acquittal made pursuant to Crim.R. 29(A), which he made at the close of appellee's case. He presents two issues for our review. In his first issue, appellant maintains that the trial court erred in denying his Crim.R. 29(A) motion for acquittal on the three trafficking in marijuana charges because appellee failed to prove beyond a reasonable doubt that he sold drugs to Garry. In his second issue, appellant contends that the trial court erred in denying his Crim.R. 29(A) motion for acquittal on the having weapons while under disability charge because appellee failed to prove beyond a reasonable doubt that he knowingly had, carried, or used a firearm.
 {¶ 34} In State v. Bridgeman (1978), 55 Ohio St.2d 261, the Supreme Court of Ohio established the test for determining whether a Crim.R. 29 motion for acquittal is *Page 9 
properly denied. The Supreme Court stated that: "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id. at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." State v. Patrick, 11th Dist. Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, at ¶ 18.
 {¶ 35} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-14:
 {¶ 36} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 37} "`"(* * *)The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes aninquiry about due process. It raises a question of law, the resolutionof which does not allow the court to weigh the evidence. * * *"'
 {¶ 38} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an *Page 10 
offense have been proven beyond a reasonable doubt.' * * *" (Emphasis sic.) (Citations omitted.)
 {¶ 39} "* * * [A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v.March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at 8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 40} With respect to his first issue, appellant is challenging his three trafficking in marijuana charges. Under the three counts of trafficking in marijuana, appellee was required to prove that appellant knowingly sold or offered to sell marijuana. On counts one and three, appellee was also required to prove the specification that appellant sold the marijuana in the vicinity of a juvenile.
 {¶ 41} The offense of trafficking is defined by R.C. 2925.03(A)(1) which provides: "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance[.]"
 {¶ 42} Here, appellant's argument focuses on the fact that the testimony of Garry, the confidential informant used by the LCNA to purchase drugs from appellant, was not credible. We disagree. Although each transaction was recorded, the quality of the tapes is poor. Therefore, appellee presented Garry to testify. Garry told the jury that he had past drug use and had entered into a rehabilitation facility six months prior *Page 11 
to testifying. He admitted to being paid to conduct these drug buys and his credibility was questioned at length by appellant's counsel. Here, Garry's admittance to prior drug problems does not indicate that he is not credible.
 {¶ 43} According to Garry, both he and his vehicle were physically searched by the LCNA prior to and after making the drug buys. Again, he testified that during the first transaction in appellant's bedroom, he bought one ounce of marijuana for $180 from appellant. The buy took place in appellant's bedroom in Darlene Teachout's residence. With respect to the second buy, Garry picked up appellant from appellant's girlfriend's house and drove him to Darlene Teachout's home, where he purchased another ounce of marijuana for $180 from appellant inside his bedroom. On the last buy, which also took place in appellant's bedroom in Darlene Teachout's home, Garry paid appellant $60 for a quarter of an ounce of marijuana. Garry testified that during two of the buys, appellant's eighteen-month-old child was in the bedroom as well as in the hallway outside the bedroom.
 {¶ 44} In addition to Gary's testimony, Patrolman Tom Sherwood ("Patrolman Sherwood") with the Willoughby Police Department, testified that he had extensive training as an officer when dealing with investigations of drug trafficking and narcotics when he was employed with the LCNA. He explained the procedure of a "controlled buy." Patrolman Sherwood indicated that a confidential informant is usually a person in the drug world that gives information. He stated that confidential informants can have charges pending or may be working off charges for a positive recommendation to the court. Patrolman Sherwood clarified that Garry was not working off any charges. *Page 12 
 {¶ 45} Special Agent 68 of the LCNA testified that he was involved in the execution of the search warrant at issue. He said that pursuant to the search warrant, agents confiscated at least one hand scale, possibly two, a digital scale, and a pound of marijuana in appellant's bedroom in Darlene Teachout's home.
 {¶ 46} Pursuant to Schlee, supra, there exists substantial evidence upon which the jury could reasonably conclude beyond a reasonable doubt that all of the elements of the trafficking in marijuana counts have been proven.
 {¶ 47} Appellant's first issue is without merit.
 {¶ 48} Regarding his second issue, appellant is challenging his having weapons while under disability charge. Appellee was required to prove that appellant knowingly acquired, had, carried, or used any firearm or dangerous ordnance. It is not disputed that appellant was under a disability pursuant to R.C. 2923.13.
 {¶ 49} The offense of having weapons while under disability is codified in R.C. 2923.13(A) which provides: "[u]nless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance * * *."
 {¶ 50} In the instant matter, Garry testified that appellant kept a gun in his bedroom and that the bedroom at issue was in fact appellant's. Garry stated that appellant had shown him a firearm and that he also saw a pistol and a rifle in appellant's bedroom. During the search, agents found a handgun and two semi-automatic rifles located in what was identified as appellant's bedroom. Again, Darlene Teachout testified that her boyfriend was a gun collector and that she never knew her sons to own any guns. She said that the bedroom where the guns were found was both appellant's *Page 13 
and his brother's bedroom. However, Darlene Teachout stated that she previously wrote a statement indicating that the bedroom where the guns were found was in fact only appellant's bedroom. Thus, the jury could reasonably infer that her testimony regarding appellant sharing the bedroom with his brother was made to protect appellant.
 {¶ 51} Pursuant to Schlee, supra, there exists substantial evidence upon which the jury could reasonably conclude beyond a reasonable doubt that all of the elements of the having weapons while under disability charge have been proven.
 {¶ 52} Appellant's second issue is without merit.
 {¶ 53} Appellant's second assignment of error is not well-taken.
 {¶ 54} In his third assignment of error, appellant contends that the trial court erred when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 55} As this court stated in Schlee, supra, at 14-15:
 {¶ 56} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 57} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record,weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 58} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "`only in the exceptional case in which the evidence *Page 14 
weighs heavily against the conviction.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387. (Citation omitted).
 {¶ 59} In the case at bar, appellant notes that this court has previously cited the decision of the Eighth District in State v.Mattison (1985), 23 Ohio App.3d 10, 14, wherein that court set forth eight factors suitable for use as guidelines in reviewing whether a verdict is against the manifest weight of the evidence. See, e.g.,State v. Harris (Apr. 10, 1998), 11th Dist. No. 96-T-5512, 1998 Ohio App. LEXIS 1540, at 7-8.
 {¶ 60} "This court has specifically rejected the Mattison factors as a standard of review: we have merely approved them for potential use in discussing manifest weight challenges." State v. Crouse, 11th Dist. No. 2004-L-213, 2006-Ohio-3776, at ¶ 42, citing Harris, supra, at 7-8. However, even under Mattison, appellant's arguments fail.
 {¶ 61} In this assignment of error, appellant reiterates that Garry was not credible, thus, a new trial must be ordered. As previously addressed in his second assignment of error, we disagree. Additionally, we note that the jury is in the best position to assess the credibility of witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. When examining witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. "`Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it.'"State v. Brown, 11th Dist. No. 2002-T-0077, 2003-Ohio-7183, at ¶ 53, quoting Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 8. *Page 15 
"Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict." Id.
 {¶ 62} Pursuant to Schlee and Thompkins, supra, the jury did not clearly lose its way in convicting appellant of trafficking in marijuana and having weapons while under disability.
 {¶ 63} Appellant's third assignment of error is without merit.
 {¶ 64} With respect to appellant's fourth, fifth, sixth, seventh, and eighth assignments of error, we note that the issues contained in those assignments have recently been addressed by this court in State v.Elswick, 11th Dist. No. 2006-L-075, 2006-Ohio-7011. Thus, based on our decision in Elswick, appellant's fourth, fifth, sixth, seventh, and eighth assignments of error are without merit.
 {¶ 65} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL, J., MARY JANE TRAPP, J., concur.
[1] Appellant's mother is Darlene Teachout.
[2] The tapes were played during the jury trial. However, the quality of the recordings were extremely poor. Thus, appellee called Garry to testify. *Page 1