OPINION
{¶ 1} Appellant, Selvin R. Cunningham, appeals from the judgment entry of the Lake County Court of Common Pleas convicting him, after trial by jury, of (1) failing to comply with the order or signal of a police officer, (2) receiving stolen property, (3) possessing criminal tools, (4) burglary, and (5) breaking and entering. For the reasons herein, we affirm. *Page 2 
 {¶ 2} Just after 4:00 a.m., on August 30, 2005, the Willoughby Hills Police Department received a call from an employee of the Giant Eagle grocery store in Willoughby Hills reporting a break in. According to the call, a store-front window had been broken and, although an individual had entered the building, he immediately fled. Officers arrived and observed glass on the floor of the store as well as outside. They determined the suspect had left without taking anything from inside the store. However, outside, garbage was strewn across the pavement and the can which formerly held the refuse was missing.
 {¶ 3} Shortly after 4:30 a.m., in Willoughby, Ohio, Officer Jamie Grieg of the Willoughby Police Department was conducting surveillance in an area near Vine Street where a break in had occurred earlier in the evening. Officer Grieg noticed headlights in a parking lot of a closed business across the street from where he was parked. He observed the vehicle, a dark blue minivan, pull out of the parking lot onto a side street and activate its left turn signal indicating the driver intended to turn left onto Vine Street. The traffic light was flashing red and, although there was no oncoming traffic, the minivan remained at the light for approximately three minutes and promptly turned right. Given the traffic offense and the unusual circumstances under which Officer Grieg happened upon the vehicle, he determined to initiate a traffic stop.
 {¶ 4} The officer subsequently activated his overhead lights and notified his dispatch of the situation. Grieg radioed the license plate number into dispatch and was advised that the van was stolen. As the officer attempted to close in on the vehicle, the minivan began to accelerate in an unsuccessful attempt to lose the officer. The van *Page 3 
navigated through several side streets and ultimately steered onto Rt. 2 moving west. After speaking with the dispatch, Officer Grieg was advised by his superior to continue his pursuit of the van. Throughout the chase, the van never attempted to stop and reached a speed of 100 mph yet, Officer Grieg never lost sight of the fleeing vehicle.
 {¶ 5} The van, while moving exceptionally fast, also maneuvered erratically in and out of lanes of traffic. As the pursuit wore on, the van led Officer Grieg through Lake County and entered Cuyahoga County. Other police departments were accordingly notified to assist in apprehending the rogue vehicle. In particular, Officers John Braun and Paul Whittreich of the Euclid Police Department eventually joined the chase which, by the time it reached Euclid, in Cuyahoga County, had moved onto Interstate 90. Eventually, the van cut across traffic and made a sudden exit off Interstate 90 onto Eddy Road in Cleveland. Officers Grieg and Braun followed the van off the highway while Officer Whittreich, concluding an abrupt exit would be unsafe, continued on the freeway and waited underneath a bridge off the interstate.
 {¶ 6} At the top of the Eddy Road exit ramp, the van struck a cement barrier while attempting to turn. Once the vehicle came to a stop, the driver of the van exited the vehicle and fled down the street on foot. No one else exited the van. Officer Grieg promptly exited his cruiser and pursued the subject. Officer Grieg testified the driver leapt from a bridge and continued to run. The officer finally apprehended the suspect under the bridge. According to Grieg, the suspect was wearing dark clothing with dark "Mechanix" work gloves on his hands. Under his work gloves, Grief testified, the suspect wore "latex plastic gloves." The suspect was later identified as Antwon Wright. *Page 4 
 {¶ 7} Meanwhile, immediately after Wright alighted from the van, Officer Braun testified the vehicle went into reverse and re-entered traffic on Interstate 90. Braun followed and the chase continued with Officer Whittreich in tow. As the chase continued in Cleveland, the van exited the highway at Martin Luther King Boulevard where it jumped the curb, went over the median, and continued traveling off the highway in the wrong direction. The officers continued to follow the van and never let it out of their sight. Ultimately, the van came to a halt after crashing into a tree in front of Sam Miller Park. The driver's side door then opened and an African American male, later identified as appellant, jumped out and began running. No one else was seen in or fleeing from the vehicle. The officers chased appellant down and, after briefly resisting, they were able to apprehend him. At the time of his arrest, appellant was wearing a white shirt, sweatpants, white shoes, and had gloves in his possession. Appellant was subsequently taken into custody.
 {¶ 8} At approximately 8:00 a.m. on the same morning, Detective David Broadwater of the Willoughby Hills Police Department was sent to investigate the break-in at Giant Eagle. He collected broken glass and was able to view the digital surveillance video using the store's security equipment. The video revealed two suspects, both African-American males, one smaller than the other. The smaller individual was wearing dark clothing and gloves and the larger individual was wearing a white shirt and light colored shoes. The larger individual was holding a crow bar which he eventually used to smash the window. Detective Broadwater was aware that the Willoughby Police had two suspects in their custody and accordingly contacted *Page 5 
Sergeant John Dalheim to discuss the case. He related the content of the surveillance video and the officers determined the detained suspects were similar to those who broke into the store.
 {¶ 9} After appellant's arrest, the minivan was taken to the Willoughby Police Department where officers obtained a search warrant and conducted a search of the vehicle. The officers first observed the van had a broken driver's side window, and the lock on the driver's side door was "punched out." Once inside the van, they discovered the steering column was peeled back exposing various aspects of the steering and ignition mechanisms. Detective Thomas Bertone testified he found, inter alia, 213 loose packs of cigarettes, 115 loose packs of cigars, a large brown garbage can, a plastic garbage can liner, a black neoprene face mask, 2 baseball caps, 2 crow bars, a tire iron, a large auger bit, and a blue duffle bag with tow chains inside.[1] The garbage can found inside the van matched that which was missing from Giant Eagle.
 {¶ 10} Wright's clothing was collected and included latex gloves, black "Mechanix" gloves, a white short-sleeved t-shirt, blue jeans, and black shoes. *Page 6 
Appellant's clothing was also collected and included a brown glove, a black glove, a multicolored dress shirt, black sweatpants, and tennis shoes.
 {¶ 11} Various items were sent to the Lake County Crime Lab for testing. David Greene, a trace evidence examiner, testified the presence of glass was found on appellant's black and brown gloves. He also found the presence of glass on appellant's sweatpants as well as inside appellant's shoes. Although the samples taken from the gloves were too small for further testing, the remaining particles exhibited a consistent refractive index with the glass tested from the shattered glass of the Giant Eagle window. The samples were also sent to Maureen Bottrell, a forensic glass examiner for the FBI, who determined the glass particles found inside appellant's shoes were indistinguishable from the glass of the Giant Eagle window.
 {¶ 12} On November 2, 2005, appellant was indicted on five felony counts: (1) failure to comply with order or signal of police officer, a felony of the third degree, in violation of R.C. 2921.331(B); (2) receiving stolen property, a felony of the fourth degree, in violation of R.C. 2913.51(A); (3) possessing criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24; (4) burglary, a felony of the third degree, in violation of R.C. 2911.12(A)(3); and (5) breaking and entering, a felony of the fifth degree, in violation of R.C. 2911.13(B). Appellant entered a plea of "not guilty" to all charges.
 {¶ 13} Although appellant was appointed counsel, he waived his right to counsel as well as his speedy trial rights. He orally moved the court to proceed pro se and the trial court granted his motion. After a lengthy jury trial, the jury returned verdicts of guilty *Page 7 
on all counts. Appellant was sentenced to 5 years for failure to comply, 18 months for receiving stolen property; one year for receiving stolen property; 5 years for burglary; the breaking and entering conviction merged with the burglary conviction for purposes of sentencing. The trial court ordered the sentences to be served consecutively for an aggregate term of 12.5 years imprisonment. Appellant now appeals and asserts seven assignments of error for our review.
 {¶ 14} Appellant's first, second, and fourth assignments of error shall be addressed together as all assert arguments pertaining to venue and the sufficiency as well as the weight of the evidence supporting his conviction for failure to comply with the order or signal of a police officer. These assigned errors provide:
 {¶ 15} "[1.] The trial court erred in not granting appellant's motion for acquittal on the charge of failure to comply with order or signal of police officer in violation of R.C. 2921.331(C)(5)(a)(ii).
 {¶ 16} "[2.] There was insufficient evidence for the jury to find the appellant guilty of failure to comply with order or signal of police officer in Lake County or as part of a course of criminal conduct that included elements that occurred in Lake County.
 {¶ 17} "[4.] The findings of guilty on the charge of failure to comply was against the manifest weight of the evidence."
 {¶ 18} Under his first and second assignments of error, appellant asserts the state failed to present adequate evidence to establish a continuing course of criminal conduct, pursuant to R.C. 2901.12(H), to sufficiently prove Lake County was the proper venue to try him on the failure to comply charge. Under his fourth assignment of error, *Page 8 
appellant contends the jury's verdict on the charge of failing to comply charge was against the weight of the evidence.
 {¶ 19} Appellant was charged with failure to comply pursuant to R.C.2921.331(B) and (C)(1) and (5)(a)(ii). Those sections provide:
 {¶ 20} "(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.
 {¶ 21} "(C)(1) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer.
 {¶ 22} "* * *
 {¶ 23} "(5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:
 {¶ 24} "* * *
 {¶ 25} "(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property."
 {¶ 26} Furthermore, Ohio's complicity statute, R.C. 2923.03 states, in relevant part:
 {¶ 27} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 28} "* * *
 {¶ 29} "(2) Aid or abet another in committing the offense;" *Page 9 
 {¶ 30} "Aiding and abetting is defined as assisting or facilitating `the commission of a crime, or to promote its accomplishment.'"State v. Higgins, 11th Dist. No. 2005-L-215, 2006-Ohio-5372, at ¶ 31, quoting State v. Johnson, 93 Ohio St.3d 240, 243, 2001-Ohio-1336. A defendant found guilty of complicity in the commission of an offense is prosecuted and punished "as if he were a principle offender." R.C.2923.03(F).
 {¶ 31} Here, the evidence revealed that, on August 30, 2005, appellant and Antwon Wright led authorities on a high speed chase through Lake County and into Cuyahoga County at speeds reaching 100 mph. After entering Cuyahoga County, the minivan occupied by the suspects struck a concrete barricade at the Eddy Road exit off of Interstate 90 in Cuyahoga County. Once the van had came to a stop, the driver, Antwon Wright, exited the van and fled on foot. Officer Jamie Grieg, of the Willoughby Police Department, commenced pursuit of Wright on foot. Officer John Braun of the Euclid Police Department, who was also involved in the chase once the van entered his jurisdiction, observed the vehicle strike the barrier. After Wright fled, Braun testified the vehicle began moving again and proceeded back onto Interstate 90. Appellant then led officers, including Braun, on another high speed chase. Braun testified appellant ultimately exited onto Martin Luther King Blvd., whereupon he lost control, jumped the curb, and crossed the median. Appellant, proceeding the wrong direction, entered Martin Luther King, followed by officers, and crashed in front of Sam Miller Park.
 {¶ 32} Appellant argues that, while a passenger in the van, he exhorted Antwon Wright to stop and therefore he was an "unwilling passenger" in the van while Wright was driving. Appellant supports this assertion with Wright's testimony that, from *Page 10 
Wright's recollection of the chase, appellant was "telling [him] to stop the vehicle." Appellant acknowledges he sped off in the van after it struck the barricade on or near Eddy Road; however, his involvement as a driver in the subsequent chase occurred only in Cuyahoga County. As appellant was allegedly an unwilling passenger in the vehicle up until it struck the barricade, he did not aid or abet Wright in the original chase. Therefore, he concludes, the only proper venue for the failure to comply charge was Cuyahoga County. We disagree.
 {¶ 33} R.C. 2901.12, Ohio's criminal venue statute, provides, in relevant part:
 {¶ 34} "(A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed.
 {¶ 35} "* * *
 {¶ 36} "(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
 {¶ 37} "(1) The offenses involved the same victim, or victims of the same type of from the same group.
 {¶ 38} "(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another. *Page 11 
 {¶ 39} "(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
 {¶ 40} "(4) The offenses were committed in furtherance of the same conspiracy.
 {¶ 41} "(5) The offenses involved the same or a similar modus operandi.
 {¶ 42} "(6) The offenses committed were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination."
 {¶ 43} Venue is neither a jurisdictional matter nor a material element of a criminal charge. State v. Woodliff, 11th Dist. No. 2004-P-0006,2005-Ohio-2257, at ¶ 22. "Venue is a personal privilege. It is a fact which the state must prove beyond a reasonable doubt unless waived by the accused." State v. McCartney (1988), 55 Ohio App.3d 170, citingState v. Headley (1983), 6 Ohio St.3d 475, 477. Venue need not be proved by express terms so long as it is established by reference to the facts and circumstances of the case. Id.
 {¶ 44} A review of the proceedings demonstrates there was sufficient evidence before the jury that both R.C. 2901.12(H)(3) or R.C.2901.12(H)(4) were proved beyond a reasonable doubt. Here, appellant asserts he was an unwilling participant in the initial stages of the chase and supports his position by pointing to Wright's testimony that urged Wright to stop. However, the jury was free to believe or discredit this testimony, particularly when viewed in light of the uncontroverted evidence that, once the vehicle hit the concrete abutment on Eddy Road, appellant recommenced the chase in an effort to elude capture. Such is not the conduct of one anxious to distance oneself from any perceived involvement in criminal activity. If a party is an actual unwilling participant or *Page 12 
a mere passenger in a lengthy, high-speed chase, it would be unreasonable for that party to continue the chase in an effort to avoid a police encounter. Under the circumstances, we hold appellant's actual behavior belies his contention that he was an unwilling victim of the circumstances.
 {¶ 45} Given the foregoing observations, the evidenced adduced at trial could reasonably be found to prove appellant assisted or cooperated with Wright the accomplishment of the crime in question, viz. failing to comply, while the men traversed Lake County. Appellant could therefore be found guilty of failure to comply via complicity to aid and abet Wright in his commission of the same. With this in mind, we hold the facts and circumstances of the case demonstrate that appellants offenses in Lake County and Cuyahoga County (1) were committed by him "as part of the same transaction or chain of events" and "in furtherance of the same purpose or objective." R.C. 2901.12(H)(3); and, (2) "[t]he offenses were committed in furtherance of the same conspiracy." R.C.2901.12(H)(4). As venue was proper, we shall next discuss whether appellant's conviction for failure to comply was supported by sufficient as well as the weight of the evidence.
 {¶ 46} An appellate court reviewing whether the evidence was sufficient to support a criminal conviction examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 273. A reviewing court may not reweigh or reinterpret the evidence; rather, the proper inquiry *Page 13 
is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 47} Alternatively, a challenge to the weight of the evidence requires an appellate court to engage in a limited weighing of the evidence in interest of determining whether the greater amount of credible evidence supports the verdict. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. In conducting the inquiry, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and remanded. State v. Martin (1983), 20 Ohio App.3d 172, 175. The discretionary power to grant a new trial should be exercised only in exceptional cases wherein the evidence weighs heavily against the conviction. Id.
 {¶ 48} In light of our analysis of the venue issue, we hold appellant was complicit in failing to comply with the order of an officer when the chase began in Lake County. Although appellant was not an active driver of the van before it crossed into Cuyahoga County, the evidence adduced at trial demonstrated he assisted and cooperated with Wright in fleeing and eluding the police through Lake County and into Cuyahoga County. The evidence reflected a continuing course of conduct and not a new and independent incident. The evidence submitted by the state demonstrated appellant and Wright were both active participants in the same chain of events, with the same objective, and in furtherance of the same end, viz., to avoid capture by police. Accordingly, we hold the state put forth sufficient evidence to sustain appellant's *Page 14 
conviction for failure to comply. We further hold the conviction was supported by the greater weight of credible evidence.
 {¶ 49} Appellant's first, second, and fourth assignments of error are therefore overruled.
 {¶ 50} Appellant's third assignment of error asserts:
 {¶ 51} "The trial court erred in giving the jury instruction on venue regarding the charge of failure to comply with order of police officer."
 {¶ 52} Appellant contends the jury instructions were confusing and erroneous as they related to the charge of failure to comply. We disagree.
 {¶ 53} A trial court is required to instruct the jury as to the applicable law on all issues presented in the case that are supported by the evidence. See, e.g., State v. Egolf, 11th Dist. No. 2000-L-113, 2003-Ohio-601, at ¶ 24. Jury instructions should present plain and unambiguous statements of the law which apply to the case and evidence presented to the trier of fact. State v. Nichols, 11th Dist. No. 2005-L-017, 2006-Ohio-2934, at ¶ 30. An appellate court must not isolate a particular instruction when considering a challenge; rather, it is required to examine the entire charge to assess whether an alleged error is prejudicial. State v. Teachout, 11th Dist. No. 2006-L-081,2007-Ohio-1642, at ¶ 19. Thus, even if an instruction is inappropriate, it will not merit reversal unless it materially affects the outcome of the case. Id.
 {¶ 54} Here, the trial court's instructions read, in relevant part:
 {¶ 55} "It is alleged that the offense charged took place in Lake County, Ohio. The right of this Court to try the defendant depends upon proof that the offense was *Page 15 
committed in this county. When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more counties or jurisdictions but it cannot be reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those counties or jurisdictions when the events . . . when the offense involve[s] the unlawful taking or receiving of property, the offender may be tried in any jurisdiction from which or into which the property or victim was taken, received, or enticed. When an offender as part of a course of criminal conduct commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima facie evidence of a course of criminal conduct: 1) the offenses were committed by the offender in the offender's same capacity or relationship to another; 2) the offenses were committed as a part of the same transaction or chain of events or in furtherance of the same purpose or objective; 3) the offenses were committed in furtherance of the same conspiracy; or 4) the offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination."
 {¶ 56} Here, appellant contends the foregoing instructions went beyond the indictment and presented confusing and erroneous issues for the jury to consider during its deliberations on the failure to comply charge. Specifically, appellant contends the issue of unlawful taking or receiving of property has no application to the issue of fleeing or eluding. *Page 16 
 {¶ 57} Here, the venue instructions were delivered after the jury was instructed on the elements of each count alleged in the indictment. Because appellant was apprehended in Cuyahoga County, the venue instructions related not simply to the failure to comply charge, but also the receiving stolen property charge. Evidently, the trial court believed guidance on how the receiving stolen property charge related to the law on venue was necessary. We do not believe the court's decision to provide basic guidance on this matter was confusing, ambiguous, or erroneous.
 {¶ 58} Moreover, the trial court's instruction fairly and reasonably paraphrases the statutory requirements set forth in the venue statute. We do not believe the language used by the trial court was overly technical or unwieldy. Because the instructions accurately summarize the relevant statutory law governing venue and provide a clear, unequivocal statement of the same, we find no error.
 {¶ 59} Appellant's third assignment of error lacks merit.
 {¶ 60} Appellant's fifth assignment of error contends:
 {¶ 61} "The finding of guilty on the charge of receiving stolen property was against the manifest weight of the evidence and not supported by sufficient evidence."
 {¶ 62} R.C. 2913.51(A) prohibits "receiving stolen property," and provides:
 {¶ 63} "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through the commission of a theft offense."
 {¶ 64} Appellant argues the state failed to prove he received, retained, or disposed of the stolen property, i.e., the van. He further argues the state failed to *Page 17 
present evidence he knew or had reason to believe the vehicle had been stolen. We disagree.
 {¶ 65} Here, although both Antwon Wright and appellant denied any awareness that the vehicle was stolen, the evidence established it was, in fact, a stolen vehicle.[2] Moreover, the state presented evidence that (1) a portion of the steering column had been "peeled" off; (2) the driver's side window was broken; and (3) the driver's side lock mechanism was "punched out." Such evidential factors are typical indicators that a vehicle was stolen. See State v. Dobson (July 5, 2001), 8th Dist. No. 78336, 2001 Ohio App. LEXIS 3036, *17. The evidence further indicated Wright failed to stop after being signaled by police in Lake County. A high-speed chase ensued and was momentarily stopped in Cuyahoga County when Wright bailed from the vehicle. However, appellant, without hesitation, continued the chase until he crashed outside a park in Cleveland.
 {¶ 66} Notwithstanding Wright's testimony that he was unaware the van was stolen, we hold the damage to the car detailed above provided objective evidence upon which one could reasonably conclude that the vehicle was stolen. Appellant's presence in the vehicle would cause him to notice the damage and therefore also give him reason to believe it was stolen. Because both parties had "reasonable cause to believe" the van was stolen, the jury could have reasonably concluded the chase was a result of the *Page 18 
parties' desire to "retain" or "dispose" of the van without being apprehended. In this respect, appellant's act of resuming the high-speed chase was evidence of his continued assistance in the accomplishment of the crime of receiving stolen property.
 {¶ 67} Alternatively, the jury did not have to believe Wright's representations regarding his lack of knowledge; rather, it could have completely discounted and/or disregarded Wright's testimony regarding a surname-less third-suspect and reasonably inferred that Wright was fully conscious of the fact that the van was stolen and his evasive actions were evidence of this awareness, i.e., Wright wanted to elude police so they would not discover he had retained a stolen vehicle. Given this construction, the jury also could have concluded appellant, as the only other individual involved in the chase, was equally aware that the van was stolen and was a party to its retention during the early stages of the chase in Lake County. Appellant's continuation of the chase in Cuyahoga County would further buttress this conclusion. That is, once Wright fled, appellant acted to continue the same course of criminal conduct by fleeing from authorities into Cleveland towards the end of retaining and/or disposing of a vehicle he knew to be stolen.
 {¶ 68} Appellant's sixth assignment of error provides:
 {¶ 69} "The finding of guilty on the charge of possession of criminal tools was against the manifest weight of the evidence and was not supported by sufficient evidence."
 {¶ 70} To find appellant committed the crime of possession of criminal tools, the state was required to prove he possessed or had under his control "any substance, *Page 19 
device, instrument, or article, with purpose to use it criminally." R.C.2923.24(A). Here, the indictment charged appellant with possession of the following devices, instruments, or articles: "crow bars, auger bit, tire iron and/or chains * * *."
 {¶ 71} Appellant contends the items alleged in the indictment were merely present in the van in which he was a passenger and which he later operated; however, the mere presence of these items is insufficient to prove the crime of possession of criminal tools beyond a reasonable doubt. We disagree.
 {¶ 72} While appellant is correct that the mere presence of criminal tools is insufficient to draw the conclusion that a defendant had actual or constructive possession of criminal tools, the evidence submitted by the state transcended this tenuous link. Specifically, Detective David Broadwater of the Willoughby Hills Police Department investigated a break-in which occurred in the early morning hours of August 30, 2005 at a Giant Eagle grocery store in Willoughby Hills. Detective Broadwater was familiar with the location as he worked part-time with Giant Eagle assisting with security at the store for the past three years.
 {¶ 73} Broadwater testified one of the large windows had been shattered near the entrance of the store. Broadwater reviewed the videotape surveillance to determine how the glass was broken. The tape showed two male suspects, at approximately 4:00 a.m., one larger than the other, peering into the store through the window. The smaller individual, later identified as Antwon Wright,[3] was wearing dark clothing, a baseball cap, *Page 20 
and a hood. Mr. Wright also wore dark gloves which bore "silverish," "shiny" symbols on or about the fist area. The larger individual was wearing a white, long-sleeved shirt, with light colored shoes. After looking into the store, Wright removed a garbage bag from a brown garbage can outside the store and dumped the contents of the bag on the sidewalk. The larger individual subsequently struck the store's window twice with a crow bar shattering the glass. After breaking into the store, the men immediately left without stealing any merchandise. The only missing item was the brown garbage can and its accompanying plastic liner.
 {¶ 74} Appellant's conviction for possession of criminal tools must be viewed in light of the evidence put forth relating to the Giant Eagle burglary. The larger individual appearing on the surveillance video was dressed in clothing matching that which appellant was wearing when he was arrested. Moreover, a brown garbage can and a plastic liner matching those taken from the Willoughby Hills Giant Eagle were found in the van at the time of appellant's arrest.4 Finally, the larger suspect in the video used a crow bar to smash the window of the store. A crow bar matching the implement used in the burglary, along with a tire iron, an auger bit, and chains, were also found in the van. Based upon this evidence, there was adequate, credible evidence for the jury to
4. In his capacity assisting with security, Broadwater became familiar with the brown garbage can handled by Wright. He testified it had remained in the same location, near the entrance of the store, for approximately three years. Broadwater had seen the garbage can frequently and had noticed, near the bottom of the can, "there had been some kind of sticker * * * and it had been ripped off." The brown garbage can recovered from the cargo area of the van driven by Wright and appellant had the remnants of a poorly removed sticker at its base. Moreover, Broadwater specifically compared the plastic liner recovered from the van with those used at the Willoughby Hills Giant Eagle and found the subject bag and comparison bag possessed the same dimensions. *Page 21 
conclude appellant possessed or had under his control the crow bar used to break into the Willoughby Hills Giant Eagle. The conviction is therefore supported by sufficient evidence as well as the weight of the evidence.
 {¶ 75} Appellant's sixth assignment of error lacks merit.
 {¶ 76} Appellant's seventh assignment of error alleges:
 {¶ 77} "It was reversible error for the trial court to allow testimony by police officers to describe what was shown on videotape and to give opinion testimony identifying appellant."
 {¶ 78} Under his final assignment of error, appellant argues the opinion testimony of Detective Broadwater that, in his view, appellant was the larger suspect in the surveillance video was inadmissible pursuant to Evid.R. 701, the rule of evidence governing opinion testimony by lay witnesses. We disagree.
 {¶ 79} Appellant failed to object to Detective Broadwater is testimony identifying him as the larger suspect in the video. The failure to object to a claimed error occurring at trial waives all but plain error.State v. Lindsey (2000), 87 Ohio St.3d 479, 482. Appellant's status as a pro se defendant did not affect this fundamental principle. Accordingly, this court will reverse only if the result of the trial clearly would have been different absent the error. Id.
 {¶ 80} Evid. R. 701 provides:
 {¶ 81} "Opinion Testimony by Lay Witness
 {¶ 82} "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally *Page 22 
based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 {¶ 83} Lay opinions, inferences, impressions, or conclusions are therefore admissible if they are those that a rational person would form on the basis of the observed facts and if they assist the jury in understanding the testimony or the delineating a fact in issue. See, e.g., State v. Kehoe (1999), 133 Ohio App.3d 591, 603.
 {¶ 84} In the instant matter, during the presentation of the videotape evidence of the Giant Eagle burglary, Detective Broadwater identified the smaller individual as Antwon Wright. Broadwater asserted this identification with certitude owing to Wright's prior admission of guilt to the burglary in question. Later, after viewing the video in the jury's presence, the following exchange took place between Broadwater and the prosecutor:
 {¶ 85} "[Q.] Now, through your viewing of the video images regarding the second [larger] individual, from the beginning of the tape from this point where the individual enters the video . . . or the surveillance video, to the point in the end, have you had an opportunity to form an opinion as to the identity of that person?
 {¶ 86} "[A.] Yes. My opinion is that this is Selvin Cunningham."
 {¶ 87} As Evid.R. 701 suggests, "[p]ersonal observations of facts do not require expert testimony." State v. Robertson (Nov.23, 1994), 8th Dist. No. 66510, 1994 Ohio App. LEXIS 5272, *6, citing State v.Nagel (1986), 30 Ohio App.3d 80 and State v. Morris (1982),8 Ohio App.3d 12. Moreover, "there is no general rule that interpretation of a mechanical reproduction must be made by an expert." Kehoe, supra, at 605. *Page 23 
 {¶ 88} Under the circumstances, Broadwater's testimony meets the requirements of Evid.R. 701 and was therefore admissible. Detective Broadwater's opinion was premised upon his own observations and was one that a rational individual would form on the basis of the observed facts. See State v. Mulkey (1994), 98 Ohio App.3d 773, 784. Moreover, the opinion assisted the jury because Broadwater had the advantage of watching the videotape footage on the digital equipment used by Giant Eagle. He testified at trial that the surveillance tape copies were "not as crisp and clear" as the original digital recording; however, according to Broadwater, Giant Eagle had already erased the original recording from its system's hard drive. Broadwater had an opportunity to view a video which possessed greater clarity than that transmitted in court and thereby help the jury in the determination of a fact in issue, viz., whether, in light of his interpretation of the digital video, appellant was the second individual involved in the Giant Eagle burglary. Accordingly we find no plain error in Detective Broadwater's opinion testimony.
 {¶ 89} Even had appellant objected, Evid.R. 701 affords the trial court considerable discretion in controlling the opinion testimony of lay witnesses. See, e.g., City of Urbana ex rel. Newlin v. Downing
(1989), 43 Ohio St.3d 109, 113; see, also, Kehoe, at 603. "Furthermore, the party challenging the testimony must demonstrate that, if the trial court did abuse its discretion, such abuse `materially prejudiced the objecting party.'" Kehoe, supra, quoting State v. Brumback (1996),109 Ohio App.3d 65, 77. *Page 24 
 {¶ 90} Here, assuming arguendo appellant had objected, the trial court would not have abused its discretion in admitting the evidence and therefore no material prejudice could issue from its admission. As Detective Broadwater's lay opinion falls squarely within the parameters of Evid.R. 701, appellant's final assignment of error is without merit.
 {¶ 91} For the reasons discussed herein, appellant's seven assignments of error lack merit and the jury verdict and judgment of the Lake County Court of Common Pleas convicting appellant of the various crimes charged is hereby affirmed.
DIANE V. GRENDELL, P.J., concurs, COLLEEN MARY OTOOLE, J., dissents.
[1] At trial, Antwon Wright testified on behalf of appellant. He indicated he encountered an acquaintance by the name of "Jim" (no known last name) in Cleveland earlier on the night in question who was driving the subject van with a surfeit of cigarettes and cigars in his possession. According to Wright, he and "Jim" drove to Lake County where they encountered appellant and invited him into the van. Wright testified that although he knew the cigarettes and cigars were stolen (because "Jim" was looking to sell them on the street), Wright had no idea the van was stolen. Moreover, although Wright pleaded guilty in a separate case to one count of failure to comply, one count of receiving stolen property (the van), and one count of burglary (Giant Eagle), his testimony suggested "Jim" essentially catalyzed the events by providing him with the van. Wright testified that he, appellant, and "Jim" were together during the chase. Mysteriously, no "Jim" nor any third-party was either seen or apprehended in connection with the events and crimes underlying this case.
[2] As alluded to in footnote 1, Antwon Wright testified he encountered an individual to whom he referred as "Jim" in the early morning hours of August 30, 2005; he testified that, "Jim" was in possession of the vehicle but never disclosed the vehicle was stolen. After their meeting, Wright testified, he and "Jim" took the van to Lake County, with Wright driving, where they eventually met appellant who joined them in the van.
[3] As it is germane to this analysis, we reiterate that Antwon Wright, as part of his plea agreement in his case, pleaded guilty to the Giant Eagle burglary and received a 5 year sentence on that charge. *Page 1