[Cite as *State v. Prater*, 2026-Ohio-438.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 25-COA-008 |
| Plaintiff - Appellee | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Ashland County Court of Common Pleas, Case No. 24-CRI-226 |
| ROBERT PRATER | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment Entry: February 11, 2026 |

**BEFORE:** Andrew J. King, William B. Hoffman, Kevin W. Popham, Appellate Judges

**APPEARANCES:** Christopher R. Tunnell, Ashland County Prosecuting Attorney, James B. Reese, III, Assistant Prosecuting Attorney for Plaintiff-Appellee; Brian A. Smith, Brian Smith Law Firm, LLC for Defendant-Appellant

OPINION

*Hoffman, J.*

{¶1} Defendant-appellant Robert Prater appeals the judgment entered by the Ashland County Common Pleas Court convicting him following jury trial of complicity (R.C. 2923.03(A)(2)) to: aggravated burglary (R.C. 2911.11(A)(1)), robbery (R.C. 2911.02(A)(2)), safecracking (R.C. 2911.31(A)), theft of drugs (R.C. 2913.02(A)(1)), tampering with drugs (R.C. 2925.24(B)), and two counts of failure to comply with the order or signal of a police officer (R.C. 2921.331(B)); convicting him of six counts of aggravated possession of drugs (R.C. 2925.11(A)); and sentencing him to an aggregate term of incarceration of sixteen years and 108 months to twenty-one years and 108 months. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On July 24, 2024, five men, including Appellant, traveled from Dayton, Ohio, to Ashland, Ohio, with plans to rob the Rite Aid store in Ashland. The Rite Aid in Ashland had previously received an alert from the company concerning store robberies. Around 7:15 p.m., two men, wearing surgical masks, neither of whom were Appellant, entered the store and moved quickly to the pharmacy area in the back. Having seen the alert, an employee of the store suspected the men planned to rob the store, and she called 911. Appellant also entered the store and began to talk to that same employee, asking how she was doing.

{¶3} Meanwhile, the other two men entered the employee-only area of the pharmacy. One man jumped over the counter and the other man pushed through a door, knocking over an employee of the pharmacy. One of the men held his finger in the pocket

of his hoodie to simulate a firearm, while the men forced the pharmacist to open the safe. The men quickly took drugs from the safe and placed them in a plastic bag.

{¶4} When Appellant realized the employee in the front of the store was calling the police, he signaled the two men in the pharmacy to run. All three men ran out of the store and jumped in the waiting vehicle.

{¶5} The vehicle, which was not driven by Appellant, led police on a high-speed chase for seventy-five miles, reaching speeds as high as 142 mph and avoiding spike strips laid by police to disable the vehicle. The suspects threw empty Rite Aid pill bottles out of the car windows during the chase, putting the pills in a bag inside their vehicle. The chase ended on Interstate 270 in the Columbus area, when the suspect's vehicle ran out of gas. Several of the men, including Appellant, jumped out of the car and fled on foot, but were apprehended by police.

{¶6} Appellant was indicted by the Ashland County Grand Jury with complicity to aggravated burglary, robbery, safecracking, theft of drugs, tampering with drugs, and two counts of failure to comply with the order or signal of a police officer. Appellant was also indicted for six counts of aggravated possession of drugs.

{¶7} The case proceeded to jury trial in the Ashland County Common Pleas Court. The jury found Appellant guilty of all counts, and the trial court convicted Appellant upon the jury's verdict. The trial court found the convictions of complicity to aggravated burglary[1], robbery, and theft of drugs merged, and the State elected to have Appellant

---

[1]Although the trial court's judgment entry of conviction and sentencing states Appellant was convicted of aggravated robbery in Count One the trial court cites the statute for aggravated burglary, and the indictment, the verdict form, and judgment confirming the jury's verdict indicate Appellant was charged with and convicted of aggravated burglary in Count One. Likewise, the State's brief recites Appellant was convicted of aggravated robbery, but the State cites the statute for aggravated burglary in its argument.

sentenced for aggravated burglary. The trial court found the two counts of failure to comply with the order of signal of a police officer merged. The trial court imposed a sentence of incarceration of ten to fifteen years for aggravated burglary, twelve months for safecracking, twenty-four months for tampering with drugs, thirty-six months for failure to comply with the order or signal of a police officer, two to three years on each of three counts of aggravated possession of drugs, and twelve months on each of the remaining three counts of aggravated possession of drugs, for an aggregate term of incarceration of twenty-five to thirty years.

{¶8} It is from the April 15, 2025, judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:

I. APPELLANT'S CONVICTIONS ON COUNTS ONE AND SIX OF THE INDICTMENT, COMPLICITY TO COMMIT AGGRAVATED BURGLARY AND COMPLICITY TO COMMIT FAILURE TO COMPLY WITH AN ORDER OR SIGNAL OF A POLICE OFFICER, WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

II. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

III. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO OBJECT TO APPELLANT'S SENTENCE AS GROSSLY DISPROPORTIONATE TO THE OFFENSES OR TO THAT OF HIS CODEFENDANTS, AND A VIOLATION OF APPELLANT'S RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH

AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION, CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

IV. THE TRIAL COURT'S SENTENCE OF APPELLANT, WITH RESPECT TO COUNTS ONE AND SIX, WAS CONTRARY TO LAW AND CONSTITUTED PLAIN ERROR, AS IT WAS GROSSLY DISPROPORTIONATE TO BOTH THE OFFENSES AND THE TRIAL COURT'S SENTENCES OF APPELLANT'S CODEFENDANTS, IN VIOLATION OF APPELLANT'S RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION.

V. THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES ON APPELLANT WAS CONTRARY TO LAW AND CONSTITUTED PLAIN ERROR, WHERE THE TRIAL COURT DID NOT MAKE THE REQUIRED FINDINGS TO IMPOSE CONSECUTIVE SENTENCES UNDER R.C. 2929.14(C)(4), EITHER AT APPELLANT'S SENTENCING HEARING OR IN THE TRIAL COURT'S SENTENCING ENTRY.

I.

{¶9} In his first assignment of error, Appellant argues the evidence was insufficient to convict him of complicity to aggravated burglary and failure to comply with the order or signal of a police officer.

{¶10} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶11} Complicity is defined by R.C. 2911.03:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

{¶12} Aggravated burglary is defined by R.C. 2911.11(A):

(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion

of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

{¶13}  Appellant specifically argues the State failed to present evidence of harm or threat of harm.  While no one was physically harmed during the burglary, the State presented testimony of an employee who "thought" she saw one of the men shove another employee in the pharmacy area, knocking her down.  Tr. 115.  Even though the witness testified she "thought" she saw an employee knocked down, the jury could choose to believe the witness's testimony and find the offender attempted to inflict physical harm.

{¶14}  Further, a police officer testified on the video footage from the store, he observed one of the men who went to the pharmacy moving his hand as if he had a firearm in the pocket of his hoodie.  The pharmacist also testified the man at the door of the pharmacy had his finger in the pocket of his hoodie, and "a firearm was implied."  Tr. 3 (56).  Using a hand under clothing to simulate a weapon while demanding and physically removing money has been determined by the Ohio Supreme Court to be sufficient evidence from which the jury could find a threat of harm. *State v. Davis*, 6 Ohio St. 3d 91, 94 (1983).  In the instant case, one of the men in the pharmacy area held his hand inside

his pocket in a manner to imply he had a weapon, while the men demanded the pharmacist open the safe to allow them to steal the drugs inside. We find this is sufficient evidence from which the jury could find the offenders threatened to inflict physical harm.

{¶15} We find the evidence was sufficient, if believed by the jury, to prove the element of an attempt or threat to inflict physical harm necessary to sustain a conviction of aggravated burglary.

{¶16} Appellant also argues the evidence was insufficient to demonstrate he was complicit in the crime of failure to comply with the order or signal of a police officer, defined by R.C. 2921.331 in pertinent part:

> (B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.
>
> (5) (a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:
>
> (i) The operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property.
>
> (ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

{¶17} Appellant argues there was no evidence he aided or abetted the driver of the vehicle in fleeing from police, as he was merely a passenger in the backseat with no control over the vehicle during the seventy-five mile, high-speed chase.

{¶18} In *State v. Cunningham*, 2008-Ohio-1127 (11th Dist.), the defendant argued as a passenger in a vehicle, he could not be convicted of complicity to failure to comply with the order or signal of a police officer. He claimed he was an "unwilling passenger," and exhorted the driver to stop. His claim was bolstered by the testimony of the driver. Although the driver jumped out of the vehicle and Cunningham resumed the flight from police in the vehicle, Cunningham argued he could not be convicted of complicity while he was not driving. In rejecting Cunningham's argument, the court held:

Here, appellant asserts he was an unwilling participant in the initial stages of the chase and supports his position by pointing to Wright's testimony that urged Wright to stop. However, the jury was free to believe or discredit this testimony, particularly when viewed in light of the uncontroverted evidence that, once the vehicle hit the concrete abutment on Eddy Road, appellant recommenced the chase in an effort to elude capture. Such is not the conduct of one anxious to distance oneself from any perceived involvement in criminal activity. If a party is an actual unwilling participant or a mere passenger in a lengthy, high-speed chase, it would be unreasonable for that party to continue the chase in an effort to avoid a police encounter. Under the circumstances, we hold appellant's

actual behavior belies his contention that he was an unwilling victim of the circumstances.

**{¶19}** *Id*. at ¶ 44.

**{¶20}** In the instant case, Appellant fled on foot after the vehicle ran out of gas. Unlike *Cunningham*, there was no evidence Appellant herein exhorted the driver to stop. Analogous to *Cunningham*, the fact Appellant continued to flee after the vehicle stopped creates an inference he was complicit in the lengthy flight from police, and belies his argument he was unwilling participant.

**{¶21}** In overruling Appellant's motion for a judgment of acquittal on this charge, the trial court noted in one of the police videos, Appellant said **they** would have stopped, but **they** thought police were trying to "flip" their car. Tr. (4) 82 (emphasis added). Trooper Jason Beck testified after they were apprehended, Appellant and the driver laughed about the fact a civilian was stopped by the spike strips the driver of their vehicle avoided, and while at the patrol station he bragged about the chase. We find there was sufficient evidence presented by the State from which the jury could find Appellant was complicit in the crime of failure to comply with the order or signal of a police officer, and not merely an unwilling passenger in the backseat.

**{¶22}** The first assignment of error is overruled.

II.

{¶23} In his second assignment of error, Appellant argues his judgments of conviction are against the manifest weight of the evidence. We disagree.

{¶24} Although Appellant generally states in his brief the jury lost its way in convicting him of all counts, he only specifically argues the judgment was against the manifest weight of the evidence as to complicity to aggravated burglary, tampering with drugs, and failure to comply. Because he makes no separate argument as to the remaining counts as required by App. R. 16(A), we will consider only his arguments as to aggravated burglary, tampering with drugs, and failure to comply. App. R. 12(A)(2).

{¶25} The term "manifest weight of the evidence" relates to persuasion. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. It concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith,* 80 Ohio St.3d 89, 102 n.4 (1997); *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶26} In determining whether a judgment is against the manifest weight of the evidence, an appellate court reviews the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Sitting as the "thirteenth juror," the court of appeals considers whether the

evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion. *Id.*

{¶27} When conducting a manifest weight review, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest miscarriage of justice, even if the evidence is legally sufficient. *Thompkins*, 78 Ohio St.3d at 387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001). Appellate courts have traditionally presumed the jury's assessment is correct, given its ability to observe witnesses' demeanor, gestures, and tone, all critical factors in evaluating credibility. *Eastley*, 2012-Ohio-2179, at ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶28} A manifest weight claim succeeds only in "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387. To reverse a conviction on manifest weight grounds, all three judges on the appellate panel must concur. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶¶ 2-4, *citing Thompkins*, syllabus ¶ 4.

{¶29} As to his convictions of aggravated burglary and failure to comply with the order or signal of a police officer, Appellant repeats his arguments set forth in his first assignment of error: specifically, the jury lost its way in finding an attempt or threat to inflict physical harm as to the crime of aggravated burglary, and the jury lost its way in finding he was something other than an unwilling passenger as to the charge of failure to comply with the order or signal of a police officer. Based on the evidence as set forth in our discussion of Appellant's first assignment of error, we find the jury did not lose its way in finding Appellant guilty of complicity to both offenses, and the judgments of conviction

of aggravated burglary and failure to comply are not against the manifest weight of the evidence.

{¶30} Appellant also argues his conviction of tampering with drugs is against the manifest weight of the evidence. Appellant was convicted of complicity to tampering with drugs as defined by R.C. 2925.24(B):

> No person shall knowingly adulterate or alter any package or receptacle containing any dangerous drug or substitute any package or receptacle containing any dangerous drug with another package or receptacle.

{¶31} Police testified that four or five times during the chase, pill bottles were thrown from both sides of the vehicle in which Appellant and his codefendants made their escape. During the chase, a police officer "marked" the location of the pill bottles by radio, and the bottles were later recovered by police. In the center console of the getaway vehicle police found a large bag of loose pills. Police testified the baggie would be accessible to anyone riding in the vehicle. From this evidence, the jury could conclude the suspects were removing the pills from the Rite Aid bottles, dumping the pills in the bag, and throwing the bottles out the window. While Appellant argues there is no evidence he directly participated in tampering with the pills, there was evidence he was complicit in the entire criminal enterprise. Appellant admitted to police he was the "doorman" or "lookout," and expected to get paid. Tr. 124. He was given the assignment by another codefendant as they walked into Rite Aid because his codefendant did not

believe Appellant could jump over the pharmacy counter.  After apprehension, Appellant laughed and bragged about the chase.   Police overheard Appellant and the other defendants attempting to get their stories straight, claiming they were traveling from Dayton to Chicago to get food.  We find the jury did not lose its way in finding Appellant complicit to tampering with drugs, and the judgment of conviction is not against the manifest weight of the evidence.

**{¶32}**  The second assignment of error is overruled.

III.

**{¶33}** In his third assignment of error, Appellant argues his trial counsel was ineffective for failing to object to Appellant's sentences on count one (aggravated burglary) and count six (failure to comply with the order or signal of a police officer) on the basis the sentences were grossly disproportionate to the sentences given to his codefendants and to the nature of the offenses, thus constituting cruel and unusual punishment under the Eighth Amendment to the United States Constitution.  We disagree.

**{¶34}**  A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153 (1988). Therefore, to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different.   *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136, (1989).  In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.   *Id*.

**{¶35}** A felony sentence should be proportionate to the severity of the offense committed so as not to "shock the sense of justice in the community." *State v. Chaffin*, 30 Ohio St.2d 13, 17 (1972); R.C. 2929.11(B). A defendant alleging disproportionality in felony sentencing has the burden of producing evidence to "indicate that his sentence is directly disproportionate to sentences given to other offenders with similar records who have committed these offenses * * *." *State v. Ewert*, 2012-Ohio-2671, ¶ 33 (5th Dist.), *citing State v. Breeden*, 2005-Ohio-510, ¶ 81 (8th Dist.).

**{¶36}** Appellant, who was serving a community control sanction at the time of the offenses herein, was sentenced to ten to fifteen years of incarceration for aggravated burglary, and thirty-six months of incarceration for failure to comply. The record does not set forth the sentences given to his codefendants, nor does it include their criminal history or other factors affecting their sentencing pursuant to R.C. 2929.11 and R.C. 2929.12. We therefore cannot find, based on the record before this Court, had counsel objected to the sentences on the grounds of disproportionality there is a reasonable probability of a change in the outcome of the sentencing proceeding. We find Appellant has not demonstrated ineffective assistance of counsel on the record before us.

**{¶37}** Appellant also argues trial counsel was ineffective for not objecting on the basis his sentences on counts one and six constituted cruel and unusual punishment. The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *State v. Weitbrecht*, 86 Ohio St.3d 368, 371-372, (1999). "Cases in which cruel and unusual punishments have been found, are limited to those

involving sanctions which under the circumstances would be considered shocking to any reasonable person," and must be "so greatly disproportionate to the offense as to shock the sense of justice in the community." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70 (1964). Generally, a sentence falling within the statutory range does not amount to cruel and unusual punishment. *State v. Williams*, 2017-Ohio-8898, ¶ 31 (1st Dist.), *citing State v. Hairston*, 2008-Ohio-2338, ¶ 21.

**{¶38}** We find Appellant has not demonstrated a reasonable probability of a change in the outcome of his sentencing had he objected on the basis his sentence was cruel and unusual. The sentences fell within the statutory range, and under the circumstances of this case, are not shocking to any reasonable person. We find counsel was not ineffective for failing to object to the sentence on Eighth Amendment grounds.

**{¶39}** The third assignment of error is overruled.

IV.

**{¶40}** In his fourth assignment of error, Appellant argues the trial court committed plain error in imposing sentence on counts one and six because the sentences were disproportionate to those received by his codefendants and grossly disproportionate to his conduct, thus constituting cruel and unusual punishment. We disagree.

**{¶41}** As discussed in our disposition of Appellant's third assignment of error, the record does not reflect the sentences given to Appellant's codefendants, nor does the record reflect the circumstances of the individual codefendants which led to the sentences each received. Appellant has not demonstrated his sentence was disproportionate to the sentences received by his codefendants.

**{¶42}** Also as discussed in our disposition of Appellant's third assignment of error, the record does not demonstrate his sentence constituted cruel and unusual punishment. The sentences on counts one and six fell within the statutory range. Appellant was serving a community control sentence at the time of the offenses. Appellant admitted he served as a doorman or lookout while his codefendants stole drugs from the safe of the Rite Aid store. Appellant and his codefendants led police on a high-speed chase for seventy-five miles, putting other drivers and law enforcement officers at risk of physical harm. Although Appellant was not the driver of the car, Appellant bragged about the chase afterwards and laughed about the fact a civilian ran over the spike strips intended for their getaway car. We find Appellant's sentences are not shocking to any reasonable person, and do not constitute cruel and unusual punishment. *See Weitbrecht, supra.*

V.

**{¶43}** In his fifth assignment of error, Appellant argues the trial court erred in failing to specially order his sentences to run consecutively to each other. We disagree.

**{¶44}** The trial court entered a separate sentence for each count. The trial court then made the specific findings required to impose consecutive sentences pursuant to R.C. 2929.14(C)(4), and set forth the aggregate sentence:

> The Court finds that consecutive sentences are necessary to punish [the] offender or protect the public from future crime and not disproportionate to seriousness of conduct and danger posed by the defendant; that that [sic] the Defendant committed one or more offenses while on a community control sanction; that two or more offenses are part

of one or more courses of conduct, and the harm caused is so great or unusual that a single prison term would not adequately reflect the seriousness of the conduct; and that the Defendant's criminal history demonstrates that consecutive sentences are necessary to protect the public. Furthermore, the Court finds the maximum term from Count One is controlling in this case.

Therefore, the aggregate prison term is **16 years 108 months (approximate total of 25 years) to 21 years 108 months (approximate total of 30 years).**

**{¶45}** Judgment Entry, 4/15/25, A-4.

**{¶46}** While Appellant is correct the trial court did not specify all sentences were to run consecutively to each other, given the trial court's recitation of the findings necessary to support imposition of consecutive sentences, it is clear mathematically from the trial court's statement of the individual sentences and the total aggregate sentence that all the sentences are to run consecutively to each other. Although the better practice would be to specifically state all sentences are to run consecutively to each other, because from the instant entry it is apparent all the sentences are to be served consecutively, we find no prejudicial error requiring resentencing.

**{¶47}** The fifth assignment of error is overruled.

**{¶48}** The judgment of the Muskingum County Common Pleas Court is affirmed. Costs are assessed to Appellant.


By: Hoffman, J.

King, P.J. and

Popham, J. concur